HAZOURI, J.
Michelle Sehnal appeals the summary denial of her Florida Rule of Criminal Procedure 3.850 motion to vacate a plea which she entered in 1995. The trial court denied the motion as untimely. We affirm.
In 1995, Sehnal entered a guilty plea to a charge of felony driving under the influence. As a condition of this plea, Sehnal accepted a permanent lifetime suspension of her driver’s license. At the time of the plea, Sehnal was advised that she could apply for a work permit license after five years.
*479 Subsequent to the plea, the Florida Legislature enacted legislation effective July 1, 1998, which prevents persons with lifetime suspensions from applying for a work permit license. § 322.271, Fla. Stat. (Supp. 1998). In the instant case, had this change not occurred, the earliest date that Sehnal would have been allowed to apply for a work permit license would have been March 22, 2000. Sehnal never filed an application for a work permit license subsequent to March 22, 2000. Instead, on November 12, 2003, Sehnal filed the instant motion to vacate her plea, claiming the change in the law made her plea involuntary.
The trial court denied the motion stating it was untimely filed, citing as authority Peart v. State, 756 So.2d 42 (Fla.2000), for the proposition that any motion for post-conviction relief, based on a change in the law, had to be filed within the two-year window in which Sehnal could have or should have known that there had been a change in the law, which in this case began on March 22, 2000. Had she made an application for a work permit license between March 22, 2000 and March 22, 2002, she would have learned that a work permit license was not permissible and would have been able to challenge her plea as involuntary in a timely fashion pursuant to rule 3.850.
In Peart, the defendant sought to withdraw his guilty plea asserting it was involuntary because the trial court failed to advise him of the possibility he could be deported as a consequence of his plea as required by Florida Rule of Criminal Procedure 3.172(c)(8). The supreme court was called upon to decide, inter alia, “whether the two-year limitation in rule 3.850 applies to writs alleging a rule 3.172(c)(8) violation and, if so, at what point does the limitation begin to run.” Id. at 45.
The third district court had rejected the defendant’s argument that the request for relief pursuant to rule 3.850 was timely because it was brought when the defendant first learned of impending deportation proceedings. The district court concluded that the claim was not founded on newly discovered evidence and, therefore, did not fall under the rule 3.850(b)(1) exception to the two-year -time limitation.
The supreme court disagreed with this conclusion and determined that the time period for filing a rule 3.850 motion to vacate the plea was within two years of learning of the threat of deportation. Id. at 46. . The court stated:
[W]e hold that the limitation period runs from when the defendant has or should have knowledge of the threat of deportation based on the plea. As explained below, in order for a defendant to establish. a prima facie case for relief, the defendant must be threatened with deportation resulting from the plea. See infra pp. 47-48. Since the day the defendant gains (or should gain) knowledge of the threat of deportation is the first day the defendant can actually articulate a prima facie case, it stands to reason that the day the defendant learns of the threat should likewise start the running of the two-year limitation period.

Id,

Applied to the instant case, the two-year limitation period began to run on the day Sehnal gained or should have gained knowledge of the change in the law. As the trial court reasoned, that day was March 22, 2000, the earliest date Sehnal was allowed to apply for a work permit license. The two-year time limitation expired after March 22, 2002, thus making her 3.850 motion of November 13, 2003, untimely.
*480 Sehnal relies on this court’s decision in Bilogan v. State, 802 So.2d 459 (Fla. 4th DCA 2001), for reversal of the trial court’s denial of the motion as untimely. Sehnal’s reliance is unwarranted because Bilogan is distinguishable. In Bilogan, this court reversed the summary denial of a similar motion, noting that Bilogan did not have the opportunity to apply for a work permit license prior to the change in the law. Therefore, the trial court’s denial of the motion as untimely was error.
In reversing the denial, this court stated: “The State acknowledges that denial of the motion as untimely was error because Bilogan could not have applied for his permit before the law changed. See, e.g., Bethune v. State, 774 So.2d 4 (Fla. 2d DCA 2000).” Although the factual sequence of when Bilogan could have or should have filed for his permit is not delineated in the opinion, the court does cite to Bethune. In Bethune, the Second District Court of Appeal noted that the defendant’s motion to withdraw his nolo contendere plea as involuntary for failure of his counsel to inform him of the potential sentencing-enhancing consequences of his plea was not untimely because he filed his motion within two years of the date he learned of the potential for the imposition of a habitual offender sentence. Id. at 5.
To conclude that Bilogan stands for the proposition that when there is a change in the law which would affect the voluntary nature of a plea, the running of the two-year limitation for filing a 3.850 motion begins only when a defendant files his or her motion would eviscerate the supreme court’s decision in Peart that the two-year time limitation begins to run on a rule 8.850 motion to challenge a plea as involuntary when a defendant gains or should gain knowledge of circumstances which would establish a prima facie case. We, therefore, hold that Sehnal’s failure to file her motion to withdraw her plea on or before March 22, 2002 results in her motion being untimely.
AFFIRMED.
FARMER, C.J., and POLEN, J., concur.